UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DIANA HUDSON,

    Plaintiff,

    v.

ALASKA AIRLINES, INC.,

    Defendant.

Case No. 18-cv-03284-PJH

**FINAL PRETRIAL ORDER**

Pursuant to Rule 16(e) of the Federal Rules of Civil Procedure, this final pretrial order is hereby entered and shall control the course of the trial unless modified by a subsequent order.

**A.    Plaintiff's Daubert Motion**

    **1.    Legal Standard**

A witness who has been qualified as an expert by knowledge, skill, experience, training, or education may give an opinion on scientific, technical, or otherwise specialized topics if (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, (2) the testimony is based on sufficient facts or data, (3) the testimony is the product of reliable principles and methods; and (4) the witness has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements are met. See Fed. R.

Evid. 702, Advisory Committee Notes. Although relevant evidence enjoys the presumption of admissibility, the trial court is obliged to act in a "gatekeeping role" with regard to the admission of expert scientific testimony under Rule 702. Daubert, 509 U.S. at 597; see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592–93.

Thus, Daubert requires a two-part analysis. Id. The court first determines whether an expert's testimony reflects "scientific knowledge," whether the findings are "derived by the scientific method," and whether the work product is "good science"—that is, whether the testimony is reliable and trustworthy. Daubert, 509 U.S. at 590 & n.9, 593. The court then determines whether the testimony is "relevant to the task at hand." Id. at 597.

Scientific evidence is reliable if it is grounded in methods of science—the focus is on principles and methodology, not on conclusions. Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 841 (9th Cir. 2001). In determining whether an expert's reasoning or methodology is scientifically valid, the district court can consider "many factors" including (1) whether a scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community. See Metabolife, 264 F.3d at 841; Daubert, 509 U.S. at 593–95.

Nevertheless, depending on the type of expert testimony offered, these factors may not be appropriate to assess reliability. Kumho Tire, 526 U.S. at 150. Other factors that might be considered to assess reliability include whether an expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, or whether an expert has adequately accounted for obvious alternative explanations. See General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing

1  data only by the ipse dixit of the expert. A court may conclude that there is simply too
2  great an analytical gap between the data and the opinion proffered."); Claar v. Burlington
3  Northern R. Co., 29 F.3d 499, 502 (9th Cir. 1994). In addition, the trial court should
4  ensure the expert "employs in the courtroom the same level of intellectual rigor that
5  characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at
6  152.

Rule 702's second prong concerns relevancy, or "fit." See Daubert, 509 U.S. at 591. Expert opinion testimony is relevant if the knowledge underlying it has a "valid scientific connection to the pertinent inquiry." Id. at 591–92. As Rule 702 requires, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." Id. at 590–92. But "scientific validity [and relevance] for one purpose is not necessarily scientific validity for other, unrelated purposes." Id. at 591.

**2. Analysis**

No party disputes Ravani's qualifications in the field of biomechanics. Defendant argues that only a medical doctor can qualify to offer an opinion about injury causation. Although some courts have held otherwise, the weight of authority supports the conclusion that "the fact that a biomechanical expert is not a medical doctor does not mean that he is not qualified to offer an opinion as to specific causation." Allen v. State Farm Mut. Auto. Ins. Co., No. 3:15-CV-0019-HRH, 2016 WL 9086966, at *4 (D. Alaska Aug. 2, 2016) (collecting cases); see also Yu-Santos v. Ford Motor Co., No. 1:06CV01773AWI-DLB, 2009 WL 1392085, at *13 (E.D. Cal. May 14, 2009); Ream v. United States, No. 2:17-CV-1141-RAJ, 2019 WL 2578600, at *2 (W.D. Wash. June 24, 2019).

Plaintiff argues that Ravani's opinions are not the product of reliable principles and methods, and that he has not reliably applied the principles and methods to the facts of the case. See Fed. R. Evid. 702; see also Daubert, 509 U.S. at 579. Specifically, plaintiff primarily challenges Ravani's opinions that "[t]ypically, a value of 1000 HIC is determined to be the threshold for a head injury. For mild TBI, HIC values as low as 400 in one study

3

[1] and 160 in another study [4] are considered as the beginning levels for such injuries."; and "[t]he lowest peak G-forces or linear acceleration to be consistent with TBI are reported to be 60g's or higher. In this incident even the upper limit values . . . are far below what has been observed to be consistent with TBI."; and "there is no reasonable probability that the forces and motions imparted to Ms. Hudson's head in the subject incident to [sic] have any potential for brain injuries." Dkt. 38-1 at ECF pp. 21–22. For the following reasons, those opinions are EXCLUDED.

The court finds that the evidence before it does not show that these opinions are the product of reliable principles and methods, or that Ravani has reliably applied the principles and methods to the facts of the case. Although Ravani reliably calculates the various forces that a bag of a certain weight would impose on an individual when falling from a certain height, there is no indication that Ravani has applied a generally-accepted, peer-reviewed, scientific theory or technique with a known error rate for determining whether such a force can cause mTBI. The studies Ravani cites in his report in fact suggest that no such generally-accepted standard establishing a force threshold for mTBI exists. Furthermore, even if defendant had demonstrated that Ravani relied upon sound principles and methods, the court finds that Ravani did not reliably apply the principles and methods to the facts of the case, because the report did not incorporate plaintiff's particular characteristics (for example, her age or physical condition) when assessing the minimum threshold of force that could have caused mTBI.

Plaintiff's other objections to Ravani's testimony are denied. In particular, Ravani's calculations based on exemplar physical models are permissible so long as a foundation for those measurements is entered into evidence. Of course, plaintiff may cross-examine Ravani in an attempt to elucidate the proper weight the jury should afford his testimony given its factual underpinnings.

**B.      Plaintiff's Motions in Limine**

      **1.      Plaintiff's Motion in Limine No. 1**

Plaintiff's first motion in limine to preclude defendant from introducing expert

4

testimony not disclosed in its expert disclosures is DENIED. Plaintiff has not specified any particular evidence she seeks to exclude, but rather refers to unbounded, broad categories of evidence. Although the opinions experts testify to must be limited to the contents of their reports, this issue is better addressed during trial as particular questions of admissibility arise.

### 2. Plaintiff's Motion in Limine No. 2

Plaintiff's second motion in limine to preclude defendant from introducing rebuttal expert testimony that exceeds the scope of rebutting plaintiff's expert testimony is DENIED. As with her first motion in limine, plaintiff has not specified any particular evidence she seeks to exclude, but rather refers to broad potential categories of evidence. Although the opinions rebuttal experts testify to must be intended solely to contradict or rebut evidence identified by another party's expert, this issue is better addressed during trial as particular questions of admissibility arise. Moreover, plaintiff's argument that rebuttal experts must be of the same academic discipline as the expert they are rebutting is unavailing.

Additionally, plaintiff's motion to exclude Dr. McIntire's testimony as cumulative of Dr. Hooker's testimony is DENIED. Because no evidence has been admitted as of yet, the court will not exclude hypothetical, unspecified testimony as cumulative.

### 3. Plaintiff's Motion in Limine No. 3

Plaintiff's third motion in limine to preclude defendant from introducing evidence, testimony, or argument that plaintiff failed to mitigate her damages is DENIED. Again, plaintiff has not identified any discernable item of evidence she is seeking to exclude by this motion. Moreover, plaintiff has not sought to strike, dismiss, or otherwise preclude defendant from asserting this affirmative defense prior to this motion in limine. A motion in limine to exclude unspecified items of evidence is not the proper mechanism at this point to adjudge the merits of defendant's affirmative defense.

### 4. Plaintiff's Motion in Limine No. 4

Plaintiff's fourth motion in limine to preclude defendant from introducing evidence

5

1 of plaintiff's past traumas experienced more than five years prior to the incident is
2 DENIED.  The quality of plaintiff's life both prior to and following her alleged injury is
3 highly relevant to the questions that will be presented to the jury at trial.  However,
4 certainly not all details about plaintiff's life and traumas sustained prior to the incident are
5 relevant, and even some relevant details would likely be unfairly prejudicial or confusing.
6 Defendant is cautioned to use discretion in this regard, and the court will entertain
7 objections at trial to exclude such evidence.

### 5. Plaintiff's Motion in Limine No. 5

Plaintiff's fifth motion in limine to preclude testimony or evidence from Monica Grant is DENIED.  Plaintiff objects to defendant's untimely disclosure of Grant, but as an impeachment witnesses, she did not need to be disclosed.

### C. Defendant's Motions In Limine

#### 1. Defendant's Motion in Limine No. 1

Defendant's first motion in limine to exclude evidence of amounts billed for plaintiff's medical care is GRANTED as unopposed.  By plaintiff's admission, she will not seek to introduce billed amounts for medical care when a provider has accepted less than the total billed amount as full payment, or as themselves evidence of the reasonable value of the services.

#### 2. Defendant's Motion in Limine No. 2

Defendant's second motion in limine to exclude plaintiff's claims for lost wages and economic damages is DENIED IN PART AND GRANTED IN PART.  Plaintiff will be permitted to testify about her claim for lost earning capacity, so the motion is denied to the extent it seeks to exclude such evidence.  However, this court will not allow the jury to calculate plaintiff's lost earning capacity if such a calculation would require the jury to base its calculation on speculation.

#### 3. Defendant's Motion in Limine No. 3

Defendant's third motion in limine to exclude certain testimony from Dawn Brown, D.O. is DENIED.  Defendant's argument that Brown's testimony will generally be

cumulative is speculative at this point.  Additionally, because Brown is licensed and certified by the state, defendant's argument that she is not as expert as plaintiff's other witnesses is not availing.

### 4. Defendant's Motion in Limine No. 4

Defendant's fourth motion in limine to prohibit plaintiff's counsel from referencing, suggesting, or asking questions about specific dollar values during voir dire or jury selection or in plaintiff's opening statement is GRANTED IN PART AND DENIED IN PART.  According to this court's regular practice, all counsel will be prohibited from referencing amounts of money during jury selection.  However, counsel are permitted to argue that plaintiff is or is not entitled to a particular damages award during their opening statements, so long as they have a good-faith belief that admissible evidence will support their arguments.

## D. Jury Instructions

### 1. Joint Instructions

At the pretrial conference, the parties indicated that they had erroneously filed an incorrect draft of their joint pretrial instructions, such that certain of the so-called joint instructions were in fact opposed.  Additionally, other previously-agreed-upon instructions were omitted.  The parties shall file final, joint jury instructions no later than September 12, 2019.

Regarding jury instructions related to damages, the parties dispute whether the Ninth Circuit model damages instructions or the CACI model damages instructions are more appropriate.  The court finds that the CACI instructions are more specific and explicative than the Ninth Circuit model instructions with regard to this action's state-law negligence claim, and the court therefore adopts the CACI model damages instructions.  The court notes defendant's objection to use of the CACI damages instructions rather than the Ninth Circuit model damages instructions.  Nevertheless, the parties' joint submission shall include all damages instructions the parties jointly believe are needed, taken from the CACI models, including CACI 3904.

### 2. Plaintiff's Separate Instructions

Regarding plaintiff's first proposed instruction, CACI 431 regarding causation with multiple causes, the court will give the instruction if the evidence admitted at trial supports doing so.

The court will give plaintiff's second and third proposed instructions, CACI 3901 and CACI 3902. Defendant does not object to either, other than to the extent it prefers the Ninth Circuit model damages instructions.

Regarding plaintiff's fourth and fifth proposed instructions, CACI 3903 and CACI 3903A, the court will give a version of this instruction, although plaintiff is ordered to resubmit a modified version. First, it must be combined with CACI 3903A and 3903D. Second, it must omit monetary amounts.

Regarding plaintiff's sixth and seventh proposed instructions, CACI 3905 and CACI 3905A, they must be combined as contemplated by the CACI instruction. The final optional paragraph of the CACI 3905 model addressing discounting to present cash value must be included. Finally, plaintiff is instructed to adjust her selection of noneconomic damages types and to reference them consistently throughout the instruction, as discussed at the pretrial conference.

Regarding plaintiff's eighth and ninth proposed instructions, CACI 3927 and CACI 3928, the court will give the instructions if the evidence admitted at trial supports doing so.

Regarding plaintiff's tenth proposed instruction, CACI 3932, there is no objection and the court will give the instruction.

### 3. Defendant's Separate Instructions

Regarding defendant's first proposed instruction, Ninth Circuit model instructions 5.1 and 5.2, the court declines to give these instructions in favor of the CACI model damages instructions.

Regarding defendant's second proposed instruction, which is a custom instruction fashioned after a California statute regarding privileged publications made in a judicial

proceeding, the court declines to give the instruction. Plaintiff may not offer evidence or argue that this judicial proceeding is a compensable source of her damages, and defendant may of course object if plaintiff deviates from this order.

Regarding defendant's third proposed instruction, Ninth Circuit model 5.4, the court will instead use the analogous instruction CACI 3904.

### E. Voir Dire

The court will conduct the voir dire orally and by using a questionnaire. The parties' jointly-proposed questions will be incorporated into the court's oral voir dire and/or the written questionnaire. The court declines to adopt plaintiff's proposed voir dire questions as argumentative. The questionnaire will be provided to counsel the week before trial.

After the court's questioning, each side shall have fifteen minutes to question the panel, but may not use that time to argue their case. The parties must abide by this court's rulings on the parties' motions in limine when conducting voir dire.

The court will empanel eight jurors. Each side shall have three peremptory challenges.

### F. Verdict Form

As discussed at the pretrial hearing, the parties are instructed to revise and resubmit the joint verdict form no later than September 12, 2019. In particular, the second question should specify that the jury will compute only damages caused by defendant's negligence. Additionally, the question describing non-economic loss should not include examples of non-economic loss.

### G. Trial Schedule and Time Limits

There will be approximately 18 hours of trial time, which will be divided equally with each side allotted 9 hours for opening statements, presentation of evidence, cross-examination, and closing arguments. Jury selection, final jury instructions, and deliberations are not included within this allotment.

### H. Other Matters

1  Defendant requested that the court exclude witnesses from trial, and plaintiff did not object. There court hereby excludes witnesses who may testify from attending the trial, including those witnesses who may be called for rebuttal.

The parties are directed to meet and confer regarding objections to exhibits and deposition excerpts. If any objection cannot be resolved through the parties' meet and confer process, the parties may file a joint letter brief concerning their unresolved disputes no later than September 16, 2019.

The parties must prepare and jointly submit a statement of undisputed facts to be read to the jury no later than September 16, 2019.

**IT IS SO ORDERED.**

Dated: September 9, 2019

PHYLLIS J. HAMILTON
United States District Judge